## Pierce v. Bank of North America and Trust Company.

*Banks and banking—Stopping payment of draft given for check—Rights of depositor—Sufficiency of affidavit of defence.*

1. Where a bank accepts a check by charging off the amount as against its depositor and issuing a draft to the payee in the amount of the check, the transaction is closed, and the bank cannot thereafter stop payment of the draft as against a holder in due course at the request of the maker of the check, although it was given by him in payment of a gambling debt.

2. In an action by the holder in due course of a negotiable instrument, the fact that the suit was brought by the holder as the agent of the payee, against whom defendant has a good defence, must be distinctly averred in the affidavit of defence; if left to inference from other averments, the affidavit is insufficient.

Rule for judgment for want of a sufficient affidavit of defence. Municipal Court, Phila. Co., Sept. T., 1923, No. 178.

*Byron, Longbottom & Pape,* for plaintiff.

*B. Gordon Bromley,* for defendant.

LEWIS, J., Nov. 14, 1923.—This is a rule for judgment for want of a sufficient affidavit of defence.

The action is one on a draft for $166, dated April 26, 1923, issued by the defendant bank upon the Metropolitan Trust Company of New York City to the order of C. E. Harmon.

The statement sets forth that on May 3, 1923, Harmon, the payee of the draft, transferred it for valuable consideration to the plaintiff; that the draft was presented for payment to the Metropolitan Trust Company, but that the defendant bank—The Bank of North America and Trust Company—which issued it, stopped payment on it.

The affidavit of defence does not deny the execution and delivery of the draft, but denies, in general terms, the allegation that plaintiff is a holder for value, and avers, as its principal defence, the following facts:

On April 26, 1923, one Henry D. Booth, Jr., gave his check, drawn on the defendant bank, to the order of C. E. Harmon, in the sum of $166. That said check was given in payment of a gambling debt which Booth owed to Harmon.

It appears also that Harmon surrendered the check so given him to the

defendant bank, and, in exchange therefor, received the bank draft upon which claim is based.

The affidavit of defence further sets forth that, after Booth gave his check to Harmon, he stopped payment on his check, but it is apparent that it was not done until after defendant in this case had given the draft to Harmon. There is a denial in the affidavit that the draft was duly presented by the plaintiff, Dennis E. Pierce, at the Metropolitan Trust Company, an averment that the plaintiff never endorsed the draft, and an admission that payment of the draft was stopped at the Metropolitan Trust Company, on which company it was drawn.

The defendant's affidavit of defence does not specifically and clearly set up the fact that the plaintiff had knowledge of the defences existing between Booth and Harmon. Neither, in our opinion, does it set up facts to show that the plaintiff did not pay good and valuable consideration for the draft in question. There is no allegation that the plaintiff was simply suing as agent for Harmon. It is possible that such inferences might be made from the facts as stated in the affidavit of defence, but, in our opinion, they are not sufficiently specific to be in accord with requirements of our decisions in similar cases. See Martz v. W. H. Willcox Co., 57 Pa. Superior Ct. 169; Kohn v. Hornung, 52 Pa. Superior Ct. 238.

The defendant does not aver that the original check which Booth issued was invalid because it was given in payment of a gambling debt, but contents itself with an allegation that it was informed by Booth that the check in question was given in payment of a gambling debt, and that Booth requested the defendant to stop payment on his (Booth's) check. But it is clear that the defendant bank issued the draft sued upon "in consideration of a check presented . . . to the defendant in the sum of $166." Harmon gave up the check; defendant issued its draft. As between the bank and Booth, this closed the transaction. The issuance of the draft must be regarded as an honoring of the check and as equivalent to a cash payment of it.

"If a check is sent for collection to the bank on which it is drawn, and such bank charges the amount thereof on its books to the drawer, he is discharged from further liability thereon, provided, generally, although not always, he has sufficient funds then on deposit with the bank to pay the check, and the bank itself is solvent:" 7 Corpus Juris, 599, § 245.

"Unless payment of a check was induced by fraud or misrepresentation on the part of the holder, such payment closes the transaction as between the bank and the holder of the check, and the bank is not entitled to recover back from the holder the amount paid:" 7 Corpus Juris, 682, § 411.

"A check, where received as absolute payment, will operate to extinguish the note or other instrument for the payment of which it is given: . . ." 8 Corpus Juris, 568, § 792.

Nor can it be controverted that when defendant issued its draft it charged Booth's account with the amount thereof. Under such circumstances, Booth's right to recall his order for payment out of his funds ceased, as the defendant bank had already acted and had already honored Booth's check by issuance of the draft in question.

"As a general rule, the drawer of an uncertified check can revoke his order for payment of his funds, or, in banking phraseology, 'stop payment,' at any time *before the bank's acceptance of the check*, and the bank is bound by such revocation and has no right to pay the check after notice thereof:" 7 Corpus Juris, 701, § 429; German National Bank v. Farmers' Deposit National Bank, 118 Pa. 294; Saylor v. Bushong, 100 Pa. 23.

4 D. & C.

When Harmon delivered Booth's check to the defendant and requested the defendant to issue its draft for it, the bank, after Booth had been charged with $166, acted as agent for Harmon. It was bound to remit to Harmon the money that thus came into its hands, and could not pay it back to Booth at the expense of Harmon: Seaboard National Bank *v.* Central Trust and Savings Co., 253 Pa. 412.

"It is well settled that when paper is sent to a bank for collection, whether payable at the bank or not, the bank is the agent of the payee or holder:" 3 Ruling Case Law, 639, § 269.

Mr. Justice Stewart, in Monongahela National Bank *v.* First National Bank of California, 226 Pa. 270, in a discussion of the subject, uses these words: "Here the action is not based on the check, and the liability that is asserted against the defendant arises out of a fact occurring after defendant's agency in connection with the check had ceased. After the defendant had surrendered the check, it had in its hands money which it had received for the plaintiff, and it is for the recovery of this that this action for money had and received was brought. . . . Since the defendant stood toward the plaintiff, with respect to the money in his hands, as agent, and since its liability did not arise directly from the check, and did not in any way depend on the integrity of the transaction from which the money resulted as between the plaintiff and the party who paid it over, the issue warranted no inquiry with respect to the origin of the check or the manner in which plaintiff acquired title to it. In allowing defendant to enter upon such inquiry, a settled rule of law was disregarded. An agent may not be allowed to deny the title of his principal to the subject-matter of the agency. The check was not the subject-matter of the agency, for agency with respect to it terminated when the check was surrendered; it was the money which the agent had received for its principal which was the subject-matter. . . . Nothing but payment to the plaintiff, or what would be its equivalent, payment to another under legal compulsion, could acquit the defendant of liability. It is never a defence to an action by principal for money collected by the agent, for the latter to show that in equity and good conscience the money belonged to a third party. Of course, it is open for the defendant to show that the subject-matter of the agency was an illegal or immoral transaction, or that it was founded in fraud; and when either of these is shown, the principal will not be allowed redress against the agent touching the transaction; but here nothing of this kind could be alleged of the subject-matter of this agency, which was money had and received by the agent. The taint that was upon the check was not communicated to the money that was paid for its redemption."

The defendant bank having received settlement, in money or its equivalent, from Booth, *eo instante*, it became the debtor of Harmon or his transferee, and liable to Harmon or his transferee in an action of *assumpsit*.

We are of the opinion that the defendant in this case, for the reasons above set forth, cannot set up as against Harmon, or as against the plaintiff, as a defence for the non-payment of its own draft, the fact that Booth had requested the defendant to stop payment of his check after the issuance of its draft.

The defendant owed no such duty to its depositor after it had issued and delivered the draft in question.

For these reasons, the rule for judgment is made absolute.