## Leibig, Administrator of Zeller, *versus* Steiner.

1. Where in charging the jury it was manifest that the judge doubted the truth of the plaintiff's sole witness of the contract in dispute, but as clearly left her credibility to the jury and repeatedly reminded them that they were to determine the facts, the Supreme Court will not reverse.

2. Where an examination of the charge reveals a somewhat lengthy review of the testimony on both sides, but no misstatement, although the jury may have been influenced by the opinion of the judge but were neither misled nor bound by his instructions, there is no ground for reversal.

3. Where declarations as to the terms of a parol contract are admissible.

May 20th 1880.   Before MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ.   SHARSWOOD, C. J., and GREEN, J., absent.

Error to the Court of Common Pleas of *Lebanon county :* Of May Term 1880, No. 181.

Assumpsit by Andrew Zeller against Frederick W. Steiner.

After the case was at issue the death of Zeller was suggested and the name of his administrator, L. M. Leibig, substituted.

The material facts will be found stated in the opinion of the court below and that of this court.

At the trial, before Henderson, A. L. J., the defendant offered to prove that he had a conversation with Andrew Zeller before he moved to the farm of defendant, and that he told the witness that he was sickly and could not work any more ; that he was going to move to the place of his father-in-law ; that he had a good chance and could do well there ; that he was to live there rent free, could keep two cows, get the feed for one horse or more, get his fire wood and potato land, half the proceeds of chickens and butter, and all that he would have to do was to feed their own stock and defendant's and work around the yard.   This evidence to be followed by proof of other declarations of a similar character, made subsequent to the alleged contract, as testified to by Miss Zeller.

Objected to, because this is an action on a special contract entered into in the spring of 1874, and the testimony is irrelevant, and the declarations of the plaintiff had reference to a contract entirely different from the one sued upon.   Evidence admitted.

The court charged as follows : "It is your duty to examine

[Leibig *v.* Steiner.]

carefully the evidence—to consider the credibility of witnesses; to see the circumstances under which they testify; to look at their testimony through the bias that may surround them; whether it is the effect of prejudice, passion or feeling. It is also your duty to reconcile, if possible, discrepancies in the evidence; but above all it is your duty to reach the truth through the evidence, and that alone. You understand that this is an action brought by Andrew Zeller in his lifetime against Frederick F. Steiner, his father-in-law, to recover on a contract for services rendered by himself and his wife. You have been sworn to try the suit between his administrator and the defendant, simply because since the bringing of this suit Andrew Zeller died, and his administrator has been substituted.

" Now you certainly have observed, in the progress of the trial and the discussion of the counsel, that if the plaintiff has any claim at all it is based on the testimony of Kate Zeller, this young girl who testified as to a contract made sometime in 1874 between Steiner and Zeller. Zeller and his wife went to live with Steiner sometime in the spring of 1873. This conversation took place, according to Kate's testimony, sometime in the spring of 1874. She was then, as it appears, a child between the age of eleven and twelve years.

" Her story is straightforward and to the point. That is, she testifies that Mr. Zeller said that he was tired staying there and was going to leave; that Steiner, the father-in-law, objected, and then said he would give him and his wife each $150 a year if they would remain. Just what they were to do—what their work was to be—is not so clearly set out by her, because it appears that, all through, the farm was in possession of a tenant, was farmed by a tenant, Zeller at the time living in a house on the premises in the same yard as the father-in-law. Take this story by itself alone; does it carry conviction to your mind? Does it satisfy you of the truth so as to establish the facts making up this contract? It is not necessary that you should assume or that you should jump to the conclusion that the young girl perjured herself. There may be many reasons given as a foundation for the story that would probably fix upon her young mind a statement that she might carry with her, and give to it a shape that she gives here, if it was not entirely as she told it. Then you must examine the story in in the light of its probabilities.

" Is this story true? Does it satisfy you that Mr. Steiner made a contract of this character with Zeller under the circumstances testified to by this girl? If he was to pay him and his wife $150 a year each so long as they were to remain there, for what was he to pay it? Simply for the attendance, such as some of the witnesses spoke of; and, as Kate says, was rendered by Zeller and his wife to Mr. Steiner, the father-in-law. Was it

[Leibig *v.* Steiner.]

simply for attending to the cows and keeping the yard in order, and the stable clean, and matters of that kind around the yard, for there is nothing said on her part that went beyond that? Is it probable that the amount would be paid, and paid in the manner in which she says it was to be paid, $150 to each? If you will think a moment, $150 to each in addition to what they were getting, you will find it was probably a very large compensation to either the woman or the man; but under any circumstances a large compensation to a woman living in a separate house in the same yard with her father—whether her father or not. Especially, you might consider the large compensation of the daughter living at home on the place with her father. But the alleged contract was made with the husband. If the contract is established to your satisfaction, it matters not whether it was much or little. It is only with a view that you examine closely the testimony of this girl to see whether or not it satisfies you that such a contract as she testifies to was made between this plaintiff and the defendant. It is the duty of the plaintiff to satisfy you that such was the contract—that a contract was made for this money for which he comes into court to recover.

"Now, we say that it was not necessary to call this testimony of the witness perjury, if you should not believe it; or if it should not satisfy you of a contract having existed between these parties. When you consider the manner in which she says it was stated by old man Steiner, you may at once find in the surrounding circumstances something upon which to base her story, and out of which it may have grown; if not sufficiently clear to justify you in concluding that it stated a fixed contract between the plaintiff and the defendant. For instance, these parties were living there, as they say—as many of the other witnesses say—and Andrew Zeller and his wife well satisfied with their condition at this place; not there grudgingly, by the testimony of the other witnesses; for one of the witnesses testifies he said he could not get along on his own farm, but he went away cheerfully because he could do better, and because his wife wanted to go home to her father. That is the testimony of Binkley, I think, one of the witnesses who was called and testified as to the inducement for going there, and under which they went there at that time. Now, going there, we say, under these circumstances, with the advantage that was given him by his father-in-law, and the relation that existed between the father-in-law and the son-in-law and the daughter, at the time this conversation or contract was made, you can see that something might have been said that a child of eleven or twelve years would pick up and mould and give form to five, six or seven years afterwards, from which a contract might be inferred, or possibly tortured, when it would not be listened to, possibly, at the time. If a little girl of eleven or twelve years of age should come to any one

[Leibig *v* Steiner.]

of us and tell us that a contract had been made between two farmers of such and such a character, we would hesitate, probably, in determining in our minds that that story carried the exact features of a contract, or was such as to justify us in giving effect to it as a contract between these parties. But these parties, we see, were living there in the relationship that existed between them ; and when Mr. Zeller said to the old man that he was going back to his own farm, he was probably prompted in so doing because he was too feeble to do his own work. As some of the witnesses testified in a subsequent part of the case, if he was complaining that he could not get along as well as he wished in doing the work of the old man—when he said he was going back home, the old man Steiner may have urged them to remain, and may have made it appear that the contract was worth $300 ; something or other might have been said to justify this child, now grown, to tell what she has told here, without the slightest imputation against her character for truth and fairness. What did occur we do not know further than she tells it—further than the evidence we have here.

" Now I submit to you whether all the evidence of this case satisfies you that a contract was made at that time to give these parties $300 a year in addition to what they were getting ; or, if that was the only evidence in this case, would that justify you in coming to the conclusion that such was the contract ? It is for you to determine. This is evidence—competent evidence ; and if believed, just in the manner in which it was told (and under the circumstances, the child could tell what did occur exactly), it would be competent to establish, and would establish, the contract.

" Now you come to the other side of the question, and examine it in the light of all the evidence, and there is a different disposition between these parties. You have the fact established by some of these witnesses just referred to that this man went there willingly, not grudgingly. Old man Binkley testified that he could go there rent free ; and I think that Mr. Wagner testifies substantially that he told him what the contract was ; that he could not do as well on his own farm in Lancaster ; could not raise as much, and that his wife wanted him to go back to her father, rent free, and to get other things mentioned ; and, under the circumstances, he went.

" Then, you have the testimony of the other witnesses—subsequent to the story, as told by this little girl—subsequently to that conversation where the contract or the version of the manner in which Zeller and his wife were living with Frederick Steiner is given of them by several different persons, both of them being present ; and you recollect clearly the version—that they were there substantially on shares, rent free. If they were there living in that way, as they said, is it at all probable that the contract of 1874, as testified to by

[Leibig *v.* Steiner.]

the girl, was made at all, particularly as the fact repeatedly appears in the evidence that the old man was enfeebled; that he was sick much of the time, and his wife a short time, and not able to do much? Is it at all probable that the contract was as told by this little girl, where so much detail was gone into by Zeller and his wife, how well they were doing, that they would not have mentioned the further fact that they got this $150 a year each in addition to what they had been telling; for you will recollect that, at one time, Zeller was rather complaining that he could not do what he ought to do, but he would let his wife attend to the dairy, &c., and they would get along well in that way.

" Then you go along one step further, and you have the testimony of William Steiner, who testifies .clearly and positively to the fact that his sister was anxious that there should be something done to relieve and prevent the claim of rent being made against them in case of the father's death, or in case they left. Is it not altogether probable that if that was troubling them they would have looked to the other matter—they would have looked to the compensation that was to be given them—for it does not appear that any demand was made at any time while they were there—no evidence of any demand of payment or a claim made, until the bringing of the suit some time after Zeller had left the place, his wife having died in the meantime.

" All these are mere circumstances for you to consider in weighing this case. Consider it now in the light of good common sense; for, after all, it is a question of appeal to the common sense of the jury.

" See from the whole of the evidence whether the contract, as set up by the plaintiff, is made out, so you can conscientiously render a verdict for the amount claimed under it. If it is, it is your duty to give that verdict; otherwise it is your duty to give a verdict in favor of the defendant." ·

The plaintiff took this writ, his first assignment of error being the admission of the plaintiff's evidence above, and the remaining assignments the foregoing charge of the court.

*Charles M. Zerbe* and *W. M. Derr*, for plaintiff in error.—— The charge of the court below was more an argument than a charge. There was no evidence to discredit the girl's testimony. No one alleged, and there was no attempt to show that she was guilty of perjury. The court alone intimated such a fact. The charge was not a fair exposition of the facts, it was too argumentative and transcended the powers of the court. It was made up of conjectures that were not founded on circumstances in evidence, and its expressions were misleading. It sounded strangely to hear the judge speak of Miss Zeller's testimony as her story, which unquestionably belittled the witness and accused her of falsehood; prejudiced

[Leibig v. Steiner.]

the minds of the jury against her, and being the only witness, did great injury to the rights of the plaintiff. That this charge was erroneous, we refer to the following authorities : Reeves v. Delaware, Lackawanna & Western Railroad Co., 6 Casey 454; Washington Mutual Fire Ins. Co. v. Rosenberger, 6 Norris 207; Greeley v. Thomas, 6 P. F. Smith 35 ; Parker v. Donaldson, 6 W. & S. 132 ; Bickham et al. v. Smith, 5 P. F. Smith 335.

*John Benson*, for defendant in error.—The court left it to the jury to determine, under all the evidence in the case, whether the contract on which the plaintiff relied was made out or not. Surely there was no error in this. The court may have, in substance, expressed an opinion, but not in specific terms, and that is no ground for reversal. They have the right to leave the whole case, where it is a question of fact, to the jury, and to review all the facts fairly : Heilbruner & Co. v. Wayte, 1 P. F. Smith 259. And to express an opinion upon the facts, if it is not given in the form of a binding direction : Magaw v. Garrett, 1 Casey 322. A judge may give his opinion freely on the weight and value of the evidence, for he is the best and safest adviser of the jury : Repsher v. Wattson, 5 Harris 365; also, see Oyster v. Longnecker, 4 Id. 269 ; Brown v. Clark, 2 Id. 377 ; Emmons v. Stahlnecker, 1 Jones 367.

Mr. Justice TRUNKEY delivered the opinion of the court, May 31st 1880.

It is agreed that there was an express contract. The plaintiff avers it was made in the spring of 1874, about a "year after Zeller moved to Steiner's farm, and Steiner promised to give Zeller $150 a year, and his wife the same amount for the time they would stay there, from the time they came until the time they left." This is denied by defendant, who alleges their contract was made before Zeller moved; that Zeller was to pay no rent, have feed for one horse, two cows and potato land; that he and his wife would do the work on the premises, attend their own stock, and two cows for Steiner; and the butter, eggs and produce to be divided equally between them. It is apparent that the agreement alleged by defendant is consistent with the plaintiff's claim, for the parties might, subsequent to the original contract, have agreed for an additional consideration of $300 per annum, to be paid to Zeller. Whether they did agree on such further consideration is the real contention.

The plaintiff proved his claim by one witness, Kate Zeller, a granddaughter of one of the parties, and a great-granddaughter of the other, and if her testimony is believed, he is entitled to recover. To repel her statement the defendant was permitted to prove the declarations of Zeller and his wife, made in his presence, before

[Leibig *v.* Steiner.]

and after the spring of 1874; and they were sufficient to warrant the finding of a contract substantially as claimed by the defendant. Alone, the declarations made before the alleged contract of 1874 amount to nothing, but with those made after, they have weight, showing that Zeller, all the time he was on Steiner's farm, asserted a contract in which he made no claim of $300 per annum, nor any other specific sum as its consideration. It was competent to prove those declarations; certainly competent, if it be true, as was objected, that they "had reference to a contract entirely different from the one sued upon." Whatever the actual contract, it related to the services and compensation of Zeller while he lived on Steiner's place. One party had as good right to prove the contract which he averred as the other. The first assignment of error is not sustained.

It is urged that the charge, as a whole, was calculated to mislead the jury. If their attention was confined to one view of the case, when there was more than one for them to consider, or if the general tenor of the charge was to mislead, although no particular portion is erroneous, or if those facts only were reviewed which tended to establish one side of the case, or if facts were supposed and submitted, as if proved, when there was no evidence, there is cause for reversal: Reeves *v.* Railroad Co., 6 Casey 454; Garrett *v.* Gonter, 6 Wright 143; Parker *v.* Donaldson, 6 W. & S. 132; Bickham *v.* Smith, 5 P. F. Smith 335. A judge may give his opinion freely on the weight and value of evidence, for he is the best and safest adviser of the jury; but he has no authority to decide any question of fact, when the party affirming it has sustained his averment by any reasonable proof. Very strong expressions of opinion on the facts are tolerated, indeed sometimes may be necessary. Even entire accuracy in the statement of facts may not be obtained, yet, if the case is left fully and clearly to the jury, under instructions not calculated to mislead, there is no fatal error: Repsher *v.* Wattson, 5 Harris 365; Bitner *v.* Bitner, 15 P. F. Smith 347.

As a general rule, that the judge should submit the facts, without expressing his opinion thereon, and without making an argument in favor of either side, is safer, more satisfactory, and better accords with the rights of parties to have disputed facts decided by the jury. It is difficult for a judge to act as an advocate for one of the parties without giving just cause of offence. Exceptional cases arise where it is the duty of the judge to express his opinion of the facts and guide the minds of the jury to a correct view of the evidence; and, therefore, it has been settled that when he does so without misleading or controlling them in the disposition of the facts, there is no ground for reversing. Often the court below is better able than the court of review to judge of the propriety or necessity of commenting on the evidence or the character of wit-

[Leibig *v.* Steiner.]

nesses. The address of counsel to the jury may have been the moving cause, and of that a court of review would know nothing. For instance, if a witness testify to a decisive fact, yet inconsistent with other testimony, and counsel presses on the jury that if they disbelieve the witness he is perjured, the court could properly inform the jury that their adverse verdict would not convict him of perjury, and that it would only show they thought him mistaken.

We are not convinced that the charge of the learned judge was unjust to the plaintiff. That he doubted the truth of the plaintiff's sole witness of the contract is clear, but he as clearly left her credibility to the jury, and repeatedly reminded them that they were to determine the facts. He spoke of her testimony as "her story," and the plaintiff complains that it sounded strangely in the judge, "belittled the witness, and accused her of falsehood; prejudiced the minds of the jury against her." If such was the meaning, or if the word was probably so understood, this cause must go back to be tried again. Its first use is in the sentence, "Her story is straightforward and to the point." Then, after calling attention to what she said, he asks, "Is the story true?" Following with comments on the testimony and circumstances, he expressly submitted to the jury to determine if there was a contract, as averred by the plaintiff. The context forbids that the jury could have understood the word "story" in any other sense than narrative, and we are satisfied it was not; nor was it intended to be, in the least degree, prejudicial to the witness. An examination of the charge reveals a somewhat lengthy review of the testimony on both sides, but no misstatement. The jury may have been influenced by the opinion of the judge, but they were neither misled nor bound by his instructions. At the outset he advised them of their duty; to examine the evidence; to judge of the credibility of witnesses and consider their surroundings; to reconcile, if possible, discrepancies in the testimony; but, above all, to reach the truth through the evidence alone; and, in conclusion, said if they could conscientiously find, from the whole evidence, a contract as set up by the plaintiff, it was their duty to render him a verdict, otherwise to find for the defendant.

Judgment affirmed.