**Hamburger Bros. & Co., Inc., Appellant, *v.* Third National Bank & Trust Company of Scranton et al.**

422

Argued March 9, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Philip V. Mattes,* with him *Jacob Meadow,* for appellant.

*Walter L. Hill,* of *O'Malley, Hill, Harris & Harris,* and *M. J. Martin,* for appellees.

OPINION BY RHODES, J., July 15, 1938:

This is an action of assumpsit by the payee and holder of a promissory note brought against the First National Bank of Scranton, Pa., to which the note was sent for collection, and the Third National Bank & Trust Company of Scranton, Pa., to which the note was presented for payment. By agreement the case was tried by a judge of the court below, without a jury. The trial judge, after hearing the evidence, made findings of fact, conclusions of law, and entered judgment nisi in favor of both defendants and against plaintiff. Plaintiff's exceptions thereto having been dismissed and the judgment nisi made final, it appealed.

There is no material dispute concerning the facts. The maker of the note in question was the Continental Cigar Company, of Scranton. Shortly before the note became due, plaintiff deposited it in the Colonial Trust Company of New York for collection. The Colonial Trust Company, through the Central Hanover Bank & Trust Company of New York, sent the note to the First National with instructions to protest the note if not paid. Although the note as originally made was payable at the office of the maker, the First National was instructed by the maker to present the note at the Third National. On the morning of the due date the First National sent the note to the Third National, but it was not paid at that time, and the First National was

requested to present the note again at 3 p. m. At that time the First National sent a notary public with the note to the Third National. When he arrived there, H. E. Barthel, assistant cashier of the Third National, telephoned to the maker, and was instructed to O. K. the note. Accordingly, Mr. Barthel wrote upon the note "O. K. H. E. B.," and it was returned to the notary who thereupon started for the First National. At the time the O. K. was placed on the note the balance in the maker's account was $3,150.11, more than sufficient to pay the note, the amount of which was $1,574.03. Shortly after the notary public had left the Third National, and before he had arrived at the First National, Mr. Barthel received a telephone call from the maker stating that it did not want the note paid or O. K.'d, and that the maker desired the note to be presented at its office. Thereupon Mr. Barthel telephoned to A. C. Richards, assistant cashier in charge of the collection department of the First National, and told him that he wanted to remove the O. K. At that moment the notary entered the latter bank, and the telephone call was turned over to him. After speaking with Mr. Barthel he erased the O. K. and protested the note, which was returned to appellant, the answer in the protest being "not provided for."

It was the custom of the banks in Scranton, upon presentment of commercial paper, to mark it O. K. instead of making actual payment by cash or otherwise, and the paper was then settled for as an obligation of the bank so marking it in the exchanges at the clearing house on the following day.

Appellant had no knowledge of this transaction relating to the placing of the O. K. upon the note and its subsequent erasure, and proceeded to obtain judgment against the maker. The presentment of the note took place on March 4, 1935, and on March 6, 1935, a petition in bankruptcy was filed against the maker. Appellant

filed its claim in the bankruptcy proceeding, but when it discovered that the note had been O. K.'d this suit was brought.

The propriety of the manner in which this suit was brought was not raised at any stage of the proceedings. Reference to a possible misjoinder of parties is first made in the brief for the First National. As our conclusion is that the First National is not liable, but that the judgment entered in favor of the Third National must be reversed and judgment entered in favor of appellant, we do not deem it necessary to now consider the manner in which suit was instituted.

The trial judge found, inter alia, as a fact: "4. It was the custom of the banks in Scranton to mark commercial paper as 'O. K.' and to settle for it as an obligation of the bank at the Clearing House on the following day."

The term "certification" is used in the briefs of counsel, and will be used in this opinion, to designate the action of the Third National in marking the note O. K. on presentment for payment. Although the Negotiable Instruments Act of May 16, 1901, P. L. 194 (56 PS §1 et seq.) makes no provision for the acceptance or certification of promissory notes or for the revocation and cancellation of such acceptance after certification, section 196, art. 1, ch. IV (56 PS §497) provides: "In any case not provided for in this act, the rules of the law merchant shall govern." Payment by such method of settlement as may be customary in a local clearing house or between clearing banks is now recognized by statute. See Bank Collection Act of June 12, 1931, P. L. 568, §9 (7 PS §220).

There was ample evidence to support the finding of the trial judge, and the custom of marking instruments O. K. so that they might be presented for payment at the clearing house the following day, as obligations of the bank to which they had been presented for payment,

apparently is conceded by all the parties in this action. The court below was of the opinion that on the facts found judgment should be entered in favor of defendants and against appellant on the ground that the Third National had the right to withdraw its certification. In this conclusion we think the court below erred.

It is not material that no rights of any other person had attached, or that there had been no acceptance of the certification by the First National before the erasure of the O. K. by the notary public at the direction of the Third National. The First National was the agent of appellant (Act of June 12, 1931, P. L. 568, §2 (7 PS §213), and the notary public selected by the First National to make presentment for payment of appellant's note at the Third National was also the agent of appellant *(Parke v. Lowrie,* 6 Watts & S. 507). In *Parke v. Lowrie,* supra, at page 508, it was also held: "What, then, was the defendant employed to do? Just as much at it was customary for other notaries to do; and it is not pretended that he did less. ...... The usage was his instruction; and if more had been expected of him, he ought to have been specially directed. Had he undertaken the business on special terms, he would have been bound to the extent of them; but as he undertook it on the basis of the practice, no more than the duties indicated by the practice could be required of him."

In the instant case the notary properly made presentment of appellant's note at the Third National. There it was certified under the established custom in lieu of payment, and delivery made to the notary. Upon delivery by the bank to the notary, no further action was required to establish the rights and obligations of the respective parties. The delivery of the note certified in lieu of cash payment was as complete and as irrevocable when made by the Third National to the notary as if the note had been paid in cash on presentation and the

currency handed to the notary. See *Monongahela Nat. Bank v. First Nat. Bank of California, Pa.,* 226 Pa. 270, 75 A. 359.

In the brief for appellant it was aptly stated: "If the Third National had handed the notary the actual cash at its window in exchange for the note and if the notary had been robbed on his way back to the First National with the money it would hardly be contended that the loss would fall upon the Third National because the delivery of the money was not complete until the notary handed it over to the First National."

It is significant that when the note was presented for payment at the Third National at 3 o'clock by the notary public, appellant's agent, payment was not refused, and that the certification under the established usage among the Scranton banks was the equivalent of cash payment in so far as the maker of the note was concerned. It naturally follows that no protest for nonpayment could have been made by the notary. If the note delivered to the notary after its certification by the Third National had not been the equivalent of cash payment under the established custom, it was the duty of the notary to protest for nonpayment; but the conclusion is inescapable that the note with the certification thereon was delivered to the notary as agent for appellant with the same effect as if cash had been delivered to appellant or its agent. It was the accepted and recognized equivalent of payment by the maker. After this had transpired the payment or its equivalent could not have been returned by appellant's agents, under the facts in this case, or the note protested for nonpayment by the maker. Cf. *Monongahela Nat. Bank v. First Nat. Bank of California, Pa.,* supra. Consequently, the attempted revocation was ineffective, and the Third National was not relieved of its liability by the conduct of the notary public and the First National in erasing the certification in compliance with the re-

quest of the Third National. Admittedly, the attempted revocation took place after 3 o'clock, the closing time of the bank. If the position of the Third National is correct, the inevitable consequence would be that the rights of appellant could have been subject to the whim of the various parties involved until the clearing house met the following day. If revocation of the certification could be made effective a short time after 3 o'clock on the day of presentment of the note, it follows that the parties could have pursued the same course of procedure any time before the meeting of the clearing house the next day, when such certified items were paid as obligations of the certifying banks. Judicial sanction cannot be given to a transaction leading to such chaotic and inequitable results.

The certification of the Third National on the note, upon its presentation for payment by the notary from the First National, made the Third National the debtor. It is clearly established by the evidence and the findings of the trial judge that the custom among the banks at Scranton was such as to make the presentment and certification equivalent to the payment of the note by the maker and the substitution of the Third National as the debtor of appellant for the amount of the note payable, in fact, in the clearing house on the next day. The certification was, in effect, an absolute engagement on the part of the Third National to pay the note, and dispensed with protest as much so as if the appellant had actually received the cash on the presentation of the note. See *Meads, Receiver, v. Merchants' Bank of Albany*, 25 N. Y. 143. The argument on behalf of the Third National that the certification constituted an offer which required acceptance is untenable. The presentation of the note was an offer to exchange it for payment. Under the prevailing custom the certification was an acceptance, constituting payment by the maker and the substitution of the bank as debtor to the

holder. After delivery to appellant's agent, nothing further was required to establish the rights and obligations of the parties. Moreover, appellant was also bound by the prevailing custom among the banks in Scranton. See 7 Corpus Juris p. 612, §273. The liability of the Third National became fixed and irrevocable when it certified the note upon presentation and delivered it to the notary public. Such certification could not be revoked or altered by erasure, or otherwise, after delivery, except with the consent of appellant. At the time of the certification the Third National had sufficient funds of the maker to pay the note, and, had it not been for the custom which prevailed, the note would have been paid in cash on presentation. As the notary acted as agent of appellant, the delivery of the certified note to him was equivalent to delivery to appellant *(Parke v. Lowrie,* supra), and it was not within the scope of the notary's employment, as agent of appellant, to subsequently alter by erasure, or agree to the revocation of, the certification, the equivalent of payment by the maker.

It is obvious that upon the presentation of the note for payment by the notary, and its certification by the Third National, in accordance with the prevailing custom among the Scranton banks, and its subsequent delivery to the notary, the agent of appellant, appellant's rights became vested, and they could not thereafter be divested without its consent. See *Trent Tile Co. v. Fort Dearborn National Bank,* 54 N. J. L. 33, 23 A. 423, affirmed, 54 N. J. L. 599.

When the note was presented at the Third National by the notary, the presentation was as if presented by appellant itself, and the certification, especially in the absence of fraud, accident, or mistake, could not be withdrawn by the Third National with the consent of either the notary or the First National, or both, in the absence of authority given by appellant. It should be

borne in mind that the Third National, upon presentation and certification of the note, was in a position to have charged the amount of the note against the account of the maker. There were ample funds for this purpose, and the presentation and certification were both at the direction of the maker. The certification being under the usage prevailing among the banks in Scranton, equivalent to payment, any failure of the Third National to have charged the account of the maker could not relieve it of the obligation which it assumed to appellant by virtue of the certification and delivery of the note so certified to appellant's agent.

We are all of the opinion that the erasure of the certification on the note was not effective to relieve the Third National, and that it is liable to appellant. We are likewise of the opinion that the First National is not liable because no loss has resulted to appellant from its unwarranted acquiescence in the erasure of the certification by the notary at the request of the Third National.

The fact that appellant, having no knowledge of what amounted to payment of the note by the maker on presentment and the subsequent unauthorized action by its agents at the request of the certifying bank, proceeded on receipt of the protested note against the maker and proved its claim in bankruptcy does not prevent recovery from the Third National in this case. It appears that it was stipulated on the record by counsel for appellant that, in the event the Third National was obligated to pay the note, all dividends recoverable on the claim in the bankruptcy proceedings of the Continental Cigar Company, the maker, should inure to the benefit of the Third National. No question has been raised or objection made to this agreement.

Judgment of the court below is affirmed as to the First National Bank of Scranton, Pa., and reversed as

to the Third National Bank & Trust Company of Scranton, Pa.; the record is remitted to the court below, with direction that judgment be entered in favor of plaintiff on its claim, and against the Third National Bank & Trust Company of Scranton, Pa., but no execution shall issue on the judgment so entered until plaintiff has made available to defendant all dividends set aside and payable on the claim based on the note in suit from the assets of the maker in bankruptcy, and provided for receipt by defendant of any dividends that may subsequently be declared on said claim.