### BUNGE v. FIRST NAT. BANK OF MOUNT HOLLY SPRINGS, PA.

No. 4189.

District Court, M. D. Pennsylvania.

Aug. 6, 1940.

120

Douglass D. Storey, of Harrisburg, Pa., for plaintiff.

Mark E. Garber, of Carlisle, Pa., for defendant.

ALBERT W. JOHNSON, District Judge.

This is an action in assumpsit for money had and received. The case was tried by the court without a jury. The jurisdiction of the court, the parties to the suit, and the amount in controversy are not questioned.

From depositions and the evidence taken, the court finds the following

### I. Facts

1. Plaintiff is a citizen and resident of the city and state of New York.

2. Defendant is a national bank organized and existing under and by virtue of the laws of the United States of America, and is engaged in the banking business in the borough of Mount Holly Springs, Cumberland County, Pennsylvania.

3. Mount Holly Paper Company was a corporation organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania, engaged in manufacture and sale of bond and ledger paper in the said borough of Mount Holly Springs until December 28, 1937, when this court took jurisdiction of the company for reorganization under section 77B of the Bankruptcy Act, as amended, 11 U.S.C.A. § 207, and later, in May, 1938, adjudicated the company a bankrupt.

4. Robert Knowles was treasurer and active head of the Mount Holly Paper Company at all times during the transactions which are the basis of this suit. By agreement of counsel his deposition was taken, and offered and admitted in evidence at the trial, subject to objection by counsel for plaintiff.

5. Pursuant to letters dated the 14th and 17th of September, 1937, from plaintiff to Knowles, and letters dated the 13th,

15th and 18th of September, 1937, from Knowles to plaintiff, and conversation in New York City between Knowles and plaintiff, and sample of wood pulp enclosed with letter of September 14, 1937, from plaintiff to Knowles, plaintiff agreed to sell, and the Mount Holly Paper Company agreed to buy, 50 tons of bleached sulphate kraft pulp at $75 per air dry ton (2,000 lbs.), f. o. b. Philadelphia or Baltimore, said pulp to be shipped with sight draft attached to bill of lading and sent to defendant.

6. September 27, 1937, plaintiff drew a sight draft for $3,881.43 on the Mount Holly Paper Company, payable to the order of himself. This draft he endorsed and deposited, together with bill of lading and invoice hereafter referred to, to his account in the Irving Trust Company, a banking corporation in the state of New York.

7. September 30, 1937, by uniform bill of lading, plaintiff consigned 287 bales of wood pulp to order of himself at Mount Holly Springs, Pennsylvania, Mount Holly Paper Company to be notified of the arrival of the goods, via Central Railroad of New Jersey and the Reading Company. The bill of lading was endorsed by plaintiff to order of Mount Holly Paper Company.

8. The bill of lading stated on its face: "The surrender of this original Order Bill of Lading properly endorsed shall be required before the delivery of the property. Inspection of property covered by this bill of lading will not be permitted unless provided by law or unless permission is indorsed on this original bill of lading or given in writing by the shipper". The shipper never gave permission for inspection before payment.

9. October 5, 1937, Irving Trust Company endorsed the draft referred to in fact no. 6, as follows: "Credited to the account of the within named payee, Endorsement guaranteed — Irving Trust Company, Lincoln Office. Notice. This bank notifies all concerned that it is not responsible either as principal or as agent for the quantity, quality or delivery of goods covered by this bill of lading attached to this draft. Irving Trust Company, New York. Pay any bank or trust company for collection and remittances. Oct. 5, 1937. All prior endorsements guaranteed. 1—67, New York 1—67".

10. October 5, 1937, Irving Trust Company sent the draft, bill of lading and invoice to defendant for collection and remittance, accompanied by a "Collection Form" addressed to defendant, which contained the following printed notice: "If not paid when due please return notes and clean drafts but hold documentary items informing us immediately of reason for non-payment. Deliver documents only on payment of drafts, unless otherwise instructed by us". Irving Trust Company never gave any instructions to defendant to deliver documents except upon payment of the attached draft.

11. Defendant received the "Collection Form", draft and other documents on October 7, 1937, and notified the Mount Holly Paper Company that day of their arrival.

12. About 11 o'clock A. M. on October 11, 1937, a representative of the Mount Holly Paper Company came to defendant bank, delivered to it a check of the paper company for the amount of the draft, drawn on the Farmers Trust Company, Carlisle, Pennsylvania, and received from defendant bank the draft, bill of lading, and invoice. The draft had been canceled "Paid".

13. About 11:15 A. M. on October 11, 1937, the Mount Holly Paper Company by surrendering the bill of lading and giving a check for freight charges, secured possession of the two cars of wood pulp from the Reading Company, and inspected them.

14. About 1:30 P. M. on October 11, 1937, Mr. Knowles of the paper company notified Mr. Snyder, of defendant bank, that the pulp was not as represented and was unfit for use, and that the Mount Holly Paper Company would not deposit with Farmers Trust Co. of Carlisle sufficient funds to make good the check given that morning by paper company to defendant bank. Mr. Snyder then telephoned the Farmers Trust Company and was told there were not sufficient funds of the paper company on deposit there to cover the check in question.

15. October 13, 1937, Mr. Snyder, of defendant, told Mr. Knowles, of the paper company, that the paper company either had to pay the check it had given defendant bank, or return to defendant bank the aforementioned canceled draft, bill of lading and invoice. Thereupon, the paper

company procured from the Reading Company a return of the bill of lading, and surrendered to defendant bank the bill of lading, invoice and canceled draft, receiving from defendant bank the check of the paper company given to defendant on October 11, 1937. Upon returning the bill of lading the Reading Company repossessed the two cars of wood pulp and removed them from the siding of the paper company, on which they had been placed. On this same date the defendant returned to Irving Trust Company in New York all documents received from it, the canceled draft being marked: "Canceled in error. First National Bank of Mount Holly Springs, Russell Clark, Ass't. Cashier".

16. Upon receipt of the documents from defendant, the Irving Trust Company charged the face of the draft to the account of Alfred Bunge, plaintiff.

17. The paper company did not at any time between October 11, 1937, and October 13, 1937, have sufficient funds on deposit at the Farmers Trust Company in Carlisle to pay its check given to defendant on October 11, 1937, in payment of draft drawn by plaintiff, and this fact was known by the representative of the paper company who presented said check at the time he presented it.

18. The Bank Collection Act of 1931, 1931 Pa.P.L. 568, 7 P.S.Pa. § 212 et seq., was in full force and effect at the time of all transactions concerned, and was applicable thereto.

19. Defendant bank exercised ordinary care in accepting the check of the Mount Holly Paper Company in payment of the draft in question, with bill of lading attached.

20. Defendant bank did not violate the instructions of its principal by accepting check of the paper company instead of cash in payment of the draft in question.

21. Defendant bank was not negligent in any of the transactions concerned.

22. Defendant bank, by promptly securing return to the plaintiff of all the documents in question, placed plaintiff in the same position he was in before any of the transactions complained of, and thereby plaintiff can show no loss due to acts of the defendant.

From the foregoing findings of fact the court arrives at the following

## II. Conclusions of Law

1. Defendant bank was subagent of depositor plaintiff for collection of the check in question, and as such was liable to plaintiff for any actual loss caused by defendant's wrongdoing.

2. Defendant bank was justified and acted within the scope of its authority in accepting the check of the Mount Holly Paper Company in payment of the draft in question, with bill of lading attached.

3. Defendant bank is not liable to plaintiff as debtor because of the non-payment of the check of the Mount Holly Paper Company, which it accepted in payment of draft with bill of lading attached.

4. The evidence and the law support a judgment in favor of defendant, together with costs in this action.

## III. Discussion

The question before the court is whether the First National Bank of Mount Holly Springs is liable as debtor to plaintiff for money had and received, because of the non-payment of a check of the Mount Holly Paper Company, which check defendant accepted in payment of a sight draft with bill of lading attached.

Plaintiff argues that defendant bank should have delivered the bill of lading to the paper company only upon receipt of cash in the amount of the draft, and failing in this duty, alleges defendant bank is liable as debtor to the plaintiff, regardless of negligence, for the face amount of the draft as for money had and received.

Defendant argues that there is no such liability for four reasons: (1) defendant's acts were proper by virtue of statutory authority given by the Bank Collection Code, (2) there was no privity between plaintiff and defendant either by agreement of the parties or imposed by law, (3) defendant was not guilty of negligence, and (4) plaintiff suffered no loss whatsoever from any act or omission of defendant bank.

Plaintiff takes the position that the Bank Collection Act of 1931, 1931 Pa. P.L. 568, 7 P.S.Pa. § 212 et seq., is inapplicable to this case. The argument is advanced that the Act applies only to transactions involving "clean" paper, such as bills, drafts or notes, and not to those involving "special" paper, such as bills of lading with sight drafts attached. From

definitions and terminology in the act it does not appear there was any intent so to differentiate between these classes of items, and at least one case has applied the act where a sight draft with bill of lading attached was involved. In re Commercial Trust Co., No. 2, 19 Pa.Dist. & Co., R. 113. The Act is sufficiently broad in scope and does apply to transactions involving "special" paper of the type here in question.

Defendant's point that there is no privity of parties here is based on its argument that defendant bank was not an agent of plaintiff for collection of the draft, but solely responsible to its immediate forwarding bank. Such is not the law. Section 2 of the Bank Collection Act of 1931, 7 P.S.Pa. § 213, provides that where an item is deposited for collection the bank of deposit shall be the agent of the depositor for its collection and each subsequent collecting bank shall be subagent of the depositor. This establishes the privity of parties necessary for the maintenance of this suit.

Plaintiff's contention that defendant bank should have demanded cash before surrendering the bill of lading is based upon a well settled principle of the law merchant, and also upon plaintiff's allegation that defendant was here specifically instructed to surrender documents only upon receiving cash in amount of the draft. It has always been the rule under the law merchant that a bank receiving a bill of lading with sight draft attached, should surrender the bill of lading only upon payment of the draft in money, Stewart v. Pen Argyl National Bank, 307 Pa. 328, 335, 161 A. 327; Federal Reserve Bank of Richmond v. Malloy, 264 U.S. 160, 44 S.Ct. 296, 68 L.Ed. 617, 31 A.L.R. 1261; Bradley Lumber Co. v. Bradley County Bank, 8 Cir., 206 F. 41; 9 C.J.S., Banks & Banking, § 243, and for failure to demand payment before surrender of the papers involved, the collecting bank is liable for any loss caused by its negligence, Stewart v. Pen Argyl National Bank, 307 Pa. 328, 335, 336, 161 A. 327. Ordinarily this would mean that the collecting bank would be liable for the face amount of the draft, since, regardless of any equities of the parties concerned, the collecting bank would have no right to demand less than the face of the draft before surrendering the documents. Fifth

National Bank v. Ashworth, 123 Pa. 212, 220, 16 A. 596, 2 L.R.A. 491.

These rules of the law merchant have been altered in Pennsylvania by enactment of the Bank Collection Act of 1931, 1931 Pa.P.L. 568, 7 P.S.(Pa.) § 212 et seq.; 9 C.J.S. Banks & Banking, sec. 213. Section 9 of the Act, 7 P.S.Pa. § 220, provides that where ordinary care is exercised, any agent collecting bank may receive in payment of an item, without becoming responsible as debtor therefor, in lieu of money, the check of the drawee or payor upon another bank. Credible evidence was produced to satisfy the court that defendant bank used ordinary care and was not negligent in the handling of this transaction. The bank had dealt satisfactorily with the paper company on prior occasions, and the paper company was a reputable business concern in the community. Defendant bank had reason to believe that the paper company's check would be honored by the bank upon which it was drawn. Having exercised ordinary care, the defendant bank comes within the protection of section 9 of the Bank Collection Act of 1931 and is not liable to the plaintiff as debtor for money had and received.

It should be noted also that defendant promptly presented the paper company's check for payment, and upon its dishonor, immediately returned to the forwarding bank (and ultimately to the plaintiff shipper) all documents involved, thereby revesting in the plaintiff all the rights he had before he undertook the transactions here involved, and thereby restoring him to his original position. Plaintiff thus shows no loss resulting from any act or omission of defendant bank and hence is not entitled to recover from it. Hamburger Brothers & Co. v. Third National Bank & Trust Co., 132 Pa.Super. 421, 430, 200 A. 696; Lipshitz v. Lindsay National Bank, Tex.Civ.App., 33 S.W.2d 874. Actual loss must be shown even though plaintiff elects to sue in assumpsit rather than in trespass for negligence. Hamburger Brothers & Co. v. Third National Bank & Trust Co., 132 Pa.Super. 421, 430, 200 A. 696.

Throughout his briefs filed with the court plaintiff has insisted that defendant bank was specifically instructed to surrender documents only upon receipt

of cash in amount of the draft. This would alter the situation under a proviso of section 9 of the Bank Collection Act of 1931, but the contention is not borne out by the record or by any evidence whatsoever. The instructions were to surrender documents only upon payment of the draft. There were no instructions to surrender documents only upon payment of the draft in cash, and as seen above, the Bank Collection Act permits the type of payment which defendant bank accepted.

For the foregoing reasons, it is ordered that judgment be and it is hereby directed to be entered for defendant in the above action, together with his costs herein.